LONG ISLAND RAILROAD, Plaintiff,

v.

UNITED STATES of America, and Interstate Commerce Commission et al., Defendants.

No. 73-C-1434.

United States District Court, E. D. New York.

Oct. 18, 1974.

**944**

Walter J. Myskowski, Washington D. C. (George M. Onken and Richard H. Stokes, Jamaica, N. Y., on the brief), for plaintiff.

Robert B. Nicholson, Dept. of Justice, Washington, D. C. (Thomas E. Kauper, Asst. Atty. Gen., and Howard E. Shapiro, Dept. of Justice, Washington, D. C., on the brief), for defendant United States of America.

Hanford O'Hara, Interstate Commerce Commission, Washington, D. C. (Fritz R. Kahn, Gen. Counsel, on the brief), for defendant Interstate Commerce Commission.

Richard A. Mehler, Washington, D. C. (Edward A. Kaier, Philadelphia, Pa., and Henry W. Herbert, New York City, on the brief), for intervening defendants Eastern District Railroads.

John J. Burchell, Omaha, Neb. (C. H. Berg, St. Paul, Minn., C. W. Burkett, San Francisco, Cal., H. L. DeLung, Jr., Chicago, Ill., J. D. Feeney, Chicago, Ill., on the brief), for intervening defendants Western District Railroads.

William H. Teasley, Washington, D. C. (James L. Tapley, Washington, D. C., and Davis, Polk & Wardwell, New York City, on the brief), for intervening defendant Southern Railway Co.

Before MOORE, Circuit Judge, and NEAHER and BARTELS, District Judges.

MOORE, Circuit Judge:

This is an action brought by the plaintiff Long Island Railroad ("LIRR") to review, set aside and enjoin the enforcement of orders of the Interstate Commerce Commission (the "Commission"), dated September 13, 1973, and September 21, 1973, entitled Ex Parte No. 299 (Sub-No. 1), Increases in Freight Rates and Charges of the Long Island Rail Road Company to Offset Retirement Tax Increases–1973. The jurisdiction of the district court is founded on 28 U.S.C. § 1336, and a three-judge panel was convened in accordance with 28 U.S.C. § 2325.

In the Railroad Retirement Amendments of 1973, P.L. 93–69, 87 Stat. 162, the Congress, *inter alia*, provided for increased taxes on railroads to be contributed toward additional retirement benefits for railroad employees. Title II of P.L. 93–69, the Railroad Rate Adjustment Act of 1973, amended section 15a of the Interstate Commerce Act (49 U.S.C. § 15a) to ensure that each railroad would be able to offset the increased retirement taxes by means of higher rates. Congress established a three-step procedure by which the rate adjustments would be implemented.[1] Section 15a(4)(a) directed the Commission to establish rules stating the requirements for railroads' petitions for adjustment of interstate rates based on increases in the railroad retirement taxes. Section 15a(4)(b) then directed the Commission to permit interim increases "in the general level of the interstate rates" within thirty days of the filing of a proper petition. Finally, section 15a(4)(c) provided for hearings to commence within 60 additional days for the purpose of making final rate determinations. In the event that the interim rates exceeded the rates finally approved, section 15a(4)(c) authorized the Commission to order refunds of the excess, plus a reasonable rate of interest.

On July 30, 1973, after a rule-making proceeding, the Commission issued rules setting forth procedures to be followed in the filing of petitions for increased

---

1. Subsection 15a(4)(d), (e) were also added by the Railroad Rate Adjustment Act of 1973 but are not relevant to this case.

rates. Ex Parte No. 298, Requirements and Procedures Relating to Railroad Rate Adjustment Act of 1973, 49 C.F.R. Part 1107. On August 15, 1973, the nation's railroads other than the LIRR filed a joint petition seeking an interim rate increase in their interstate freight rates of 2.0 percent, effective October 1, 1973, and a further increase to 2.7 percent on January 1, 1974. The LIRR filed an individual petition on August 24, 1973, requesting an interim terminal surcharge of 3.5 percent, effective October 1, 1973, to be increased to 5.5 percent on January 1, 1974.

The decision to proceed individually for a terminal surcharge rather than join the petition of the other railroads was prompted by circumstances peculiar to the LIRR. The LIRR estimated that its additional costs in 1974, resulting from the retirement tax increases would be in excess of $5,400,000.[2] But it projected freight revenues in the same period to be less than $10,000,000.[3] Thus, the LIRR felt that it could not join the petition of the other railroads for a rate increase that would be only 2.7 percent in 1974, since this would have yielded additional revenues in the neighborhood of $270,000, or only about 5 percent of increased retirement tax costs. In contrast, the terminal surcharge[4] would generate over $3,600,000 in 1974,[5] with the remaining differential to be recovered through better productivity and increased traffic.[6]

On September 13, 1973, the Commission issued a report and order permitting the establishment of the interim freight rate increases of the railroads other than the LIRR[7] and rejecting without prejudice the filing of the LIRR's terminal surcharge tariff. On September 18, the LIRR filed a petition for reconsideration, which was denied by the Commission in an order dated September 21, 1973. Three days later the LIRR commenced this action, and on September 27, 1973, Judge Bartels issued a Temporary Restraining Order (TRO) restraining the Commission

> from enforcing or otherwise making effective its orders of September 13, 1973 and September 21, 1973, in Ex Parte 299 (Sub-No. 1) and from refusing to accept for filing the aforementioned proposed tariff of plaintiff to become effective October 8, 1973.

In addition, Judge Bartels ordered that sums collected pursuant to the terminal surcharge be held in a separate trust account, subject to refund at six percent interest, until further order of the court.

---

2. Verified Statement of Thomas P. Moore in Support of the Long Island Rail Road's Petition for Increases in Freight Rates and Charges to Offset Increases in Retirement Taxes, at 2 (Sept. 17, 1973).

3. Brief for the LIRR at 6.

4. The terminal surcharge provides for imposition of a surcharge, in addition to line-haul rates, to or from points on the LIRR. Revenues from the surcharge accrue solely to the LIRR. In contrast, had the LIRR joined the petition of the other railroads, the increases would have been subject to the usual divisions for freight interlined with other carriers. The LIRR receives only about 14 percent of through freight charges to and from points on the LIRR. The LIRR estimated that to recoup its cost increases from its share of the line-haul rates would have required an increase of 37.5 percent in all line-haul rates involving the LIRR. See The Long Island Rail Road Company's Petition for Increases in Freight Rates and Charges to Offset Increases in Retirement Taxes 3 (Sept. 17, 1973).

5. Verified Statement of James L. Faraci in Support of The Long Island Rail Road's Petition for Increases in Freight Rates and Charges to Offset Increases in Retirement Taxes 2–3 (Sept. 17, 1973).

6. Petition, *supra* note 4, at 2.

7. Ex Parte No. 299, Increases in Freight Rates and Charges to Offset Retirement Tax Increases—1973. The Commission reduced increases proposed by the railroads to 1.9 percent effective October 1, 1973, and 2.6 percent effective January 1, 1974. The Commission noted that the uniform percentage increase created certain inequities, since some railroads received more revenues than necessary to offset retirement tax increases while others received less than required. Ex Parte 299 at 6–7. The Commission's order therefore directed the railroads to submit a plan to correct the inequities at the final rate hearings. *Id.* at 7.

Pursuant to the TRO, the LIRR's terminal surcharge was filed with the Commission and became effective October 8, 1973. Ten days thereafter, on October 18, this three-judge court heard arguments by attorneys for all parties, including the intervenors, namely, the Eastern District Railroads, the Western District Railroads, and the Southern Railway. With the exception of the LIRR, the parties urged this court to defer decision until after the Commission's order with respect to a final rate determination. However, the Commission's decision has not been forthcoming.

Section 15a(4)(b), pertaining to interim rate increases to offset retirement tax expenses, provides:

(b) Notwithstanding any other provision of law, the Commission shall, within thirty days of the filing of a verified petition in accordance with rules promulgated under subparagraph (a) of this paragraph, by any carrier or group of carriers subject to this chapter, permit the establishment of increases in the general level of the interstate rates of said carrier or carriers in an amount approximating that needed to offset increases in expenses theretofore experienced or demonstrably certain to occur commencing on or before the effective date of the increased rates, as a result of any increases in taxes under the Railroad Retirement Tax Act, as amended, occurring on or before January 1, 1975, or as a result of the enactment of the Railroad Retirement Amendments of 1973. Such increases in rates may be made effective on not more than thirty nor less than ten days' notice to the public, notwithstanding any outstanding orders of the Commission. To the extent necessary to effectuate their establishment, rates so increased shall be relieved from the provisions of section 4 of this title and may be published in tariff supplements of the kind ordinarily authorized in general increase proceedings.

The rejection of the Long Island's terminal surcharge was based upon the Commission's conclusion that section 15a(4)(b) does not permit such a tariff.[8] The Commission reasoned as follows:

Notwithstanding the petitioner's position and arguments, paragraph (4)(b) of the amendment to section 15a of the act requires that the Commission shall "permit the establishment of increases in the general level of the interstate rates" of a carrier or carriers to offset increases in costs resulting from increases in retirement taxes. Petitioner's proposal of a terminal surcharge, which is not concurred in by other carriers participating in joint rates with the petitioner, is not a tariff supplement of the kind "ordinarily authorized in general increase proceedings," and therefore is not permitted by the statute empowering us to permit "increases in the general level" of rates to effect increased retirement taxes.

Ex Parte 299 (Sub-No. 1) at 8.

We are of the opinion that the Commission has misconstrued section 15a(4)(b) and that this provision does not prohibit a terminal surcharge of the type filed by the LIRR. In this conclusion we are apparently joined by Commissioner Hardin, who wrote a separate opinion.[9] We therefore set aside the order of the Commission in Ex Parte No. 299 (Sub-No. 1) and enjoin the Commission from rejecting the LIRR's terminal surcharge tariff as an interim rate increase. Accordingly, the trust fund ordered established by Judge Bartels' TRO

---

8. The Commission also referred to the failure of the LIRR to include a refund provision in its proposed tariff. However, this defect had been cured when the LIRR requested reconsideration on September 18 and is of no significance here.

9. Ex Parte 299 and Ex Parte 299 (Sub-No. 1) at 9–10 (Commisioner Hardin concurring in part).

of September 27, 1973, may be dissolved, although sums collected by the LIRR under the terminal surcharge of course remain subject to refund if the LIRR's final rate increase approved by the Commission under section 15a(4)(c) is less than the interim rate increase.

In reaching this decision we are not unmindful of the proposition that the construction put on a statute by the agency charged with administering it is entitled to deference. *E. g.,* Volkswagenwerk v. FMC, 390 U.S. 261, 88 S.Ct. 929, 19 L.Ed.2d 1090 (1968). But neither are the courts required to rubberstamp an agency interpretation which they deem inconsistent with the plain statutory language and the policy underlying the statute. *Id.* at 272, 88 S.Ct. 929.

The sole apparent basis for the Commission's refusal to permit the LIRR to file its rate increases was that the proposal was "not a tariff supplement of the kind 'ordinarily authorized in general increase proceedings . . . .'" The Commission appears to have concluded that this was a shortcoming which rendered the terminal surcharge impermissible under the statute. However, section 15a(4)(b) says only that tariff supplements of a kind ordinarily authorized in general increase proceedings "may" be used, not that they must be. In this respect the statute is clearly permissive and not mandatory, and this portion does not prohibit a terminal surcharge.

Nor can we perceive any other basis for concluding that the LIRR's proposal is not authorized by section 15a(4)(b). It is clear that the section contemplates that a carrier might choose to file independently for an interim rate increase rather than petition along with other carriers as a member of a group. Section 15a(4)(b) allows "any *carrier* or group of carriers" to file a petition, and directs the Commission to "permit the establishment of increases in the general level of the interstate rates of said *carrier* or carriers" so as to offset retirement tax increases (emphasis added). Thus, the fact that the LIRR filed individually surely does not render its proposal invalid. And since the terminal surcharge would apply to all interstate freight proceeding to or from points on the LIRR, it has the effect of raising the general level of the LIRR's interstate rates.

The entire thrust of section 15a(4)(b) is toward establishment of an expedited method of getting the necessary higher rates into effect. Congress sought to remove procedural obstacles and, therefore, began the section with the words: "Notwithstanding any other provision of law." The sole inquiry at the interim stage was to be whether the proposed increase clearly exceeded the amount needed to cover increases in costs. *See* Conference Report No. 93–319, 1 U.S.Code Cong. & Admin.News 1658, 1661 (1973). Under these circumstances, the Commission's denial of the LIRR's terminal surcharge as an interim rate increase was not only unwarranted but also frustrated Congress' evident purpose to assure that railroads were immediately able to recover their increased retirement benefit contributions.

In holding that the LIRR's proposal of a terminal surcharge was an appropriate method of effecting an interim rate increase under section 15a(4)(b), we express no view with respect to its propriety as a final solution to the problem of recovering increased costs. This is properly the Commission's decision to make in the first instance in the hearings mandated by section 15a(4)(c). The latter provision on its face appears to contemplate the consideration of more factors than are appropriate under the interim measures of section 15a(4)(b).

So ordered.